IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br> **Complainant** <br><br> -v- <br><br> **ISAAC ANTHONY THOMAS,** <br><br> **Defendant.** | Criminal No.: 1:23-cr-00069-CKK <br><br> **DEFENDANT ISAAC ANTHONY THOMAS'** <br><br> **OPPOSITION TO UNITED STATES' MOTION FOR REVOCATION OF RELEASE** <br><br> And <br><br> **MOTION TO CLARIFY COURT'S ORDER** |

Defendant Isaac Anthony, by and through undersigned counsel, hereby files his **(1)** Motion to Clarify Court's Order, with his companion **(2)** Opposition To United States' Motion For Revocation Of Release filed at ECF Dkt # 33, on June 24, 2023.

The Court currently has a status conference scheduled in this case on July 3, 2023, at 10:00 AM at which presumably the Court will address pending motions.

## MEMORANDUM OF LAW

### I. INTRODUCTION

The Court decided to give Defendant Thomas bail from pre-trial detention. Initially, of course Defendant Isaac Anthony Thomas has yet to stand trial for the allegations brought by the Government United States of America, Complainant. Therefore, he has not been convicted of any crime for which his imprisonment in this case would be justified.

The Court having rendered that decision, the door is closed to the Government re-opening it without showing not only a change of circumstances but a material and meaningful change. At least that has been the Government's adamant position upon every motion to modify detention.

In seeking to show a material change of circumstances, the Government brings a motion for revocation now on the grounds that (1) On May 31, 2023, shortly before 8:00 PM, Defendant was involved in a car accident when another driver stopped abruptly in front of his vehicle, causing his front end to crash into the other car's rear end, with his insurance policy lapsed.  He was charged with failing to stop and his lapsed insurance was noted, (2) Much earlier (no relation to the car accident), during pre-trial supervision Defendant tested positive for marijuana use but responded with evidence that he obtained and used marijuana pursuant to a properly-issued medical marijuana card authorizing him to lawfully possess and use the marijuna , (3) the reasons for the medical marijuana use provoked the Government's and Court's interest, and (4) the Court ordered by Minute Order that Defendant sign a release without specificity concerning Defendant's therapy which has raised several unresolved questions and problems not yet clarified including when Defendant has contacted medical professionals attempting to comply and ran into problems.

## II. COURT'S MINUTE ORDER AS PRESENTED IS NOT CAPABLE OF COMPLIANCE WITHOUT CLARIFICATION AND MODIFICATION

In the busi-ness of the Court's work, the wording of the Minute Orders suffer from difficulties making it impossible for counsel to review or Defendant to comply, which no doubt the Court has not been fully advised of.  The following summary of the argument may be helpful to start:

### A. Pre-Trial Services has Not Provided Defendant with a Copy of a Release that Defendant is Being Asked to Sign.

Although the Government has Requested and the Court has Ordered that the Defendant sign some kind of unspecified release – and the Court is likely under the impression that some specific document has been provided for Defendant to sign – to the best of counsel's awareness

Defendant has not been provided with something to sign and counsel has not been provided with a copy to review and provide advice upon.  Such matters are of course governed by the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as well as the Fifth Amendment and Sixth Amendment to the U.S. Constitution.  This is not some trivial matter.  Counsel must be able to review what Pre-Trial Services wants Defendant Thomas to sign.

Apparently, Pre-Trial Services _"showed"_ a copy of a form at a distance (unreadable at that distance) to Thomas, but did not provide him the opportunity to read it or to retain a copy.

### B. Pre-Trial Services Cannot Practice Medicine or Psychiatry Without the Necessary Licenses.

Meanwhile, the representations made by Pre-Trial Services to Defendant Thomas and to the therapists Thomas has proposed to use indicate that office's strong expectation that the Government must be "involved" or "participate" in Defendant Thomas' therapy or treatments. This is what prompted counsel to ask for a copy of the proposed release, to suggest edits or modifications to it to comply with the law.  Pre-Trial Services does not have any role to play to "participate in" or "be involved with" any person's medical treatment or psychological therapy. Counsel assumes that Thomas' recollection of the conversation is accurate but in any event would want to edit the proposed release to make certain.   Among other reasons, the personnel in question would have to be issued the appropriate licenses from the State jurisdictions wherein such medical or psychological services are being performed.  Here, the State of Michigan would need to license the U.S. Attorney's Office for the District of Columbia and/or Pre-Trial Services personnel.  Counsel determined to suggest edits to the release that Defendant Thomas is being asked to sign only to find that Thomas himself does not have a copy, so he believes, of what he is supposed to be signing.

    **C. Defendant Recognizes and Accepts the Tangential but Unobjectionable Step of Confirming his Continued Attendance at Therapy**

The Court's Minute Orders sound in an inference that Defendant Thomas is refusing to sign anything, which is inaccurate.

Thomas has always agreed to provide any and all verification that he is and is continuing over time to attend scheduled sessions and meeting any other requirements. Naturally, this intertwines with a professional's decision, recommendations, and scheduling decisions of what they want Thomas to do. So successful participation of course involves the professional's decision-making primarily. However, even if not raised by the Defendant, counsel would feel disregarding responsibilities not to draw a distinction between the content and substance of therapeutic sessions as opposed to verification in whatever form the Court or Pre-Trial Services views as satisfactory that Thomas is participating.

    **D. Pre-Trial Services Disruption of Thomas' Therapeutic Plans.**

Counsel understands to be among the concerns that each time Thomas has made appointments or arranged relationships for him to pursue therapy, Pre-Trial Services has not only interfered with those plans by contacting the therapist(s) directly but doing so behind his back. A couple of would-be therapists, we are given to understand, cancelled appointments with Thomas and refused further involvement after being contacted by the Government. Thomas was not informed that the Government might contact them but provided disclosure in the interest of cooperation and assuring Pre-Trial Services of his good intentions in attempting to comply. Therefore, any orders or processes and any release must be edited such that the Government may confirm Thomas faithful participation but prevent interference that a therapist would find to be meddling in their work.

### E. Defendant Thomas Found that Professionals do Not Recognize a Generic, Non-Specific Evaluation

Even though the Court's Minute Orders as requested by the Government may seem clear and simple enough, when confronted with the actual work of the professionals at issue Defendant Thomas discovered that they reject the idea of an over-arching, generic, umbrella evaluation without a clear definition of what it is they are being asked to evaluate. They need to know the purpose, scope, and end result of a medical or psychological evaluation of Defendant Thomas. They (each of the different candidates Thomas has spoken to) want to know what it is they are supposed to be looking for or determining, particularly in a very short-term process as opposed to a long-term relationship of therapy. (Thomas is aiming for a long-term sustainable arrangement, but the Court will likely want some kind of answer quickly.)

### F. The Only Relevant Question Should be Whether There are Any Grounds for Concern of a Patient Being Dangerous

None of these issues are properly before the Court arising from the Court's determination to release Defendant on bail pending trial. On May 31, 2023, Thomas was _charged_ with (not found yet or ever) a traffic citation of failing to stop in time. This traffic offense does not rise to a violation of bail under the governing law.

Defendant's use of medical marijuana was entirely lawful and authorized under Michigan law, and may not give rise to a violation of bail under the governing law, being completely legal.

The fact that Thomas got in a relatively minor car accident[1] does not bear on the operative questions under the Bail Reform Act of likelihood of showing up for trial or being a danger to himself or others. Lawful use of marijuana does not either.[2]

---

[1] That is, evaluating the car accident against the type of violations of law normally of interest to bial.
[2] Again, we are not informed of any factor in the car accident making Thomas under the influence during that accident. The police report is relatively detailed for such an incident. It notes his

Therefore, any order by the Court should be drafted to address issues legitimately before the Court.  Openly rummaging unguided through Thomas' medical history and treatment is not tethered to any particular aspect of the decision to release him on pre-trial detention.  An open-ended indulgence of curiosity into Thomas' private medical information does not find a mooring point within any part of this process under the Bail Reform Act.

This entire exercise of looking over medical professionals' shoulders occurs within the State of Michigan having made an official determination that Thomas should be awarded a medical marijuana card.

So the question is:   Is the Government asking the District Court to review like an appellate court the State of Michigan's decision?  And not only that but we have no basis in fact identified to support any idea that the State of Michigan got it wrong.  Surely the Government would tongue-lash us with *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), if the situation was reversed.

### III.     GOVERNING LAW

#### A. Material Change of Circumstances Required Before Government's Motion Can be Heard

The Government has been extremely aggressive in January 6 related cases in demanding that a Court may not and must not, in the Government's view, consider any modification of pre-trial release orders without a material and substantial change in circumstances.  For the Government to bring a motion or the Court to consider a motion modifying the existing status, the Government must show that there are materially changed circumstances which were not

---

precautionary transport to Genesys Hospital where any question of being under the influence would likely have been tested. No such suggestion appears in the records we have before us.

known and could not be discovered by reasonable inquiry during prior decisions concerning release from detention.  Adopting the analysis firmly insisted upon by the Government itself, the Government (here including pre-trial services) could have determined that Defendant Thomas was prescribed for medical purposes with medical marijuana use.  The Government lectures us routinely that the fact that it did not occur to a party to inquire does not crack open the door to allow a rehearing of a pre-trial detention order.

>  Changing only the name from the Government's own legal arguments:
>
>> Section 3142(f)(2)(B) permits a court to reopen a bond hearing and reconsider a defendant's detention if the court "finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue [of] whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." * * *
>>
>> It is Defendant [Thomas] burden to come forward with "new and material information," which "must consist of truly changed circumstances, something unexpected, or a significant event." *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020) (internal citation and quotation omitted).

Paraphrasing the Government's Opposition to Defendant's Third Motion for Release regarding Kenneth Harrelson from *United States v. Thomas Caldwell*, 1:21-cr-0028, ECF Dkt. #499.

The Government is here judicially estopped from arguing differently than "It is the Government's burden to come forward with 'new and material information,' which 'must consist of truly changed circumstances, something unexpected, or a significant event.'"

The fact that the Government merely chose not to inquire about medical issues such as Thomas' treatment with medical marijuana or the reasons thereof would mean that the Government could have found that out – unless quashed by the Court explicitly – had the Government thought it important enough previously engage in that inquiry.

Nothing that the Government raises now justifies re-opening the question of bail, as the Government would and frequently has sternly lectured us.  If we were to follow one set of laws

Page 7 of 34

for everyone, rather than tilting the tennis court in the Government's favor, the Government would be demanding not merely that the Government's own motion be denied but that it not be heard or considered.

### B. Thomas' Status is Presumed Innocent

The Court may not use detention pre-trial to inflict any punishment upon the Defendant. Defendant Thomas is for all purposes at all times presumed innocent until proven guilty beyond a reasonable doubt.  *See, e.g., Taylor v. Kentucky*, 436 U.S. 478 (1978).   The Due Process Clause requires the prosecution to prove beyond a reasonable doubt every element of the charged criminal offense. *See, In re Winship*, 397 U.S. 358, 364 (1970). The burden to prove or disprove an element of the offense may not be shifted to the defendant. See *id.;* see also *Patterson v. New York*, 432 U.S. 197, 215 (1977).

Evidence is insufficient to sustain a conviction when it goes no further than to "raise a question [of guilt] in a reasonable man's mind" or "create suspicion." *Cooper v. United States*, 218 F.2d 39, 42 (D.C. Cir. 1954). Even when evidence raises a "grave suspicion" in the reasonable juror's mind as to guilt, it is insufficient to support a verdict, unless proof of guilt beyond "a reasonable doubt" is possible on the evidence. *Scott v. United States*, 232 F.2d 362, 364 (D.C. Cir. 1956). In other words, *"some* evidence of guilt" is not enough. *United States v. Valle*, 807 F.3d 508, 515 (2d Cir. 2015) (emphasis added).

"The court may not permit a jury to render a guilty verdict based on 'ambiguous evidence' from the government, which encourages the jury to 'engage in speculation.' *Bailey v. United States*, 416 F.2d 1110, 1116 (D.C. Cir. 1969) or indulge in a lawless verdict.

### C. Purpose of Bail under Bail Reform Act

The Bail Reform Act of 1984 authorizes one of those carefully limited exceptions.

Relevant here, the government may seek a defendant's pretrial detention if it has charged an offense falling within one of five enumerated categories. *See* Mem. Op., *United States v. Chansley*, No. 21-cr-00003-RCL, at 8 (D.D.C. March 8, 2021) (quoting 18 U.S.C. § 3142(f)(1)). Assuming the court finds that the defendant has been charged with such an offense, the court "shall order" a defendant detained before trial if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

"In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).

"The crux of the constitutional justification for preventative detention under the Bail Reform Act is that, '[w]hen the Government proves by clear and convincing evidence that an arrestee presents an *identified and articulable threat* to an individual or the community, . . . a court may disable the arrestee *from executing that threat.*'" *United States v. Munchel*, 2021 U.S. App. LEXIS 8810, at *13 (D.C. Cir. March 26, 2021) (emphasis added) (*quoting Salerno*, 481 U.S. at 751). "Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community," *id.* at *19, and "a defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *Id.* at *13.

Then, only after the government has met its burden of proving a specific articulable threat to an individual or the community, the government must establish, again by clear and convincing evidence, "that *no* condition or combination of conditions will reasonably assure the safety of

any other person and the community," 18 U.S.C. § 3142(f)(2), or, in other words, that pretrial detention is the *only* means by which the safety of the community can reasonably be assured. *See United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).

The D.C. Circuit recognized in *United States v. Singleton*, 182 F.3d 7, 13 (D.C. Cir. 1999) (*quoting Salerno*, 481 U.S. at 739, that the government can also seek pretrial detention if "such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror," 18 U.S.C. § 3142(f)(2), circumstances the government has not alleged here.

### D. Abstaining from Drugs as Condition of Bail

It is quite typical if not automatic and nearly-universal to include conditions in an order for bail that a Defendant awaiting trial abstain from drunkenness and from illegal drug use.

Counsel does not mean to dispute the common practice. But instead the question is how to treat that issue now on a Government motion for revocation of pre-trial release from detention.

When receiving a motion to change existing status for bail, the Court must consider that even though widely-accepted and routine, the actual legal relevance of illegal drug use to the basis of release from detention is tangential or remote in most cases. The assumption that a person may take marijuana and then be flung into an insane rage by "the Demon Weed" as in the fear-porn movie "Reefer Madness" issued in 1936 is unfounded and unpersuasive.[3] Without evidence showing such matters to be directly relevant to any real threat, the goals of ensuring that a Defendant show up for trial and is not a danger to himself or others would not be

---

[3] Counsel does not venture to endorse blind use of marijuana, but only to test whether it connects to issues of one being dangerous under the Bail Reform Act.

Page **10** of

influenced by Thomas testing positive for marijuana use.[4]

The proposition that a Defendant might be "tested" in another way for compliance with the law is not applicable here where Defendant Thomas has fully complied with the law by obtaining a proper medical marijuana authorization card pursuant to local law in Michigan.

### E.  Pre-Trial Detention cannot be Punitive

The deprivation of the liberty of a person not convicted of any crime is such a serious matter that the Framers of the Constitution, including the first session of Congress which added in theBill of Rights:

> **The Eighth Amendment to the United States Constitution states:**
>
> **"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."**

> Note that the constitution is *not* limited only to "Excessive *amounts* of bail…" but its interpretation has been complicated and combined with Due Process:

> The Due Process Clause foresees eligibility for bail as part of "due process." See *Salerno*, supra, at 748–751, 107 S.Ct. 2095 ;*Schilb v. Kuebel*, 404 U.S. 357, 365, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971) ;  *Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 96 L.Ed. 3 (1951). Bail is "basic to our system of law." *Schilb*, supra, at 365, 92 S.Ct. 479. It not only "permits the unhampered preparation of a defense," but also "prevent[s] the infliction of punishment prior to conviction." *Stack, supra,* at 4, 72 S.Ct. 1.It consequently limits the Government's ability to deprive a person of his physical liberty where doing so is not needed to protect the

---

[4] Contrast, for example, where a Defendant might be charged with a violent fight among wholesale drug dealers, which would be nothing like the situation here.  On certain facts, there could be a connection between drug use and violence.  But that would have to be established.

Page **11** of

> public, *see Salerno, supra*, at 750–751, 107 S.Ct. 2095 or to assure his appearance at, say, a trial or the equivalent, see Stack, supra, at 4–5, 72 S.Ct. 1. Why would this constitutional language and its bail-related purposes not apply to members of the classes of detained persons at issue here?
>
> The Eighth Amendment reinforces the view that the Fifth Amendment's Due Process Clause does apply. The Eighth Amendment forbids "[e]xcessive bail." It does so in order to prevent bail being set so high that the level itself (rather than the reasons that might properly forbid release on bail) prevents provisional release. See *Carlson v. Landon*, 342 U.S. 524, 545, 72 S.Ct. 525, 96 L.Ed. 547 (1952) (explaining that the English clause from which the Eighth Amendment was copied was understood "to provide that bail shall not be excessive in those cases where it is proper to grant bail"). That rationale applies a fortiori to a refusal to hold any bail hearing at all. Thus, it is not surprising that this Court has held that both the Fifth Amendment's Due Process Clause and the Eighth Amendment's Excessive Bail Clause apply in cases challenging bail procedures. See, e.g., *Salerno, supra*, at 746–755, 107 S.Ct. 2095 ; *Carlson*, supra, at 537–546, 72 S.Ct. 525.

*Jennings v. Rodriguez*, 138 S. Ct. 830, 862, 200 L. Ed. 2d 122 (2018).

Of course, it is a rule of statutory interpretation to construe any statute consistently with the U.S. Constitution rather than to provoke a confrontation with the terms of the U.S. Constitution. *See Ohio v. Akron Ctr. for Reproductive Health*, 497 U.S. 502, 514, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) ('Where fairly possible, courts should construe a statute to avoid a danger of unconstitutionality' (internal quotations omitted).)  Here, this and all Courts are similarly obliged to interpret and apply the relevant statutes consistently with the Eighth Amendment to the U.S. Constitution, not to relegate the Constitutional command to a mere backdrop."

The crux of the constitutional justification for preventative detention under the Bail

Reform Act is that, '[w]hen the Government proves by clear and convincing evidence that an arrestee presents an *identified and articulable threat* to an individual or the community, . . . a court may disable the arrestee *from executing that threat.*'" *United States v. Munchel*, 2021 U.S. App. LEXIS 8810, at *13 (D.C. Cir. March 26, 2021) (emphasis added) (*quoting Salerno*, 481 U.S. at 751). "Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community," *id.* at *19, and "a defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *Id.* at *13

Then, only after the government has met its burden of proving a specific articulable threat to an individual or the community, the government must establish, again by clear and convincing evidence, "that *no* condition or combination of conditions will reasonably assure the safety of any other person and the community," 18 U.S.C. § 3142(f)(2), or, in other words, that pretrial detention is the *only* means by which the safety of the community can reasonably be assured.  *See United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).

### IV.   CONCLUSION

Defendant, by counsel, requests that:

A. The Court apply the same consistent standard equally to both (or all) parties and not indulge the Government in maintaining two sets of books, so to speak, as to what legal principles apply to re-opening bail status.

Page **13** of

B. The Court deny a modification of prior decisions on pre-trial release from detention as not being supported by a *significant* change of circumstances not counting matters that the Government could have inquired into previously if then at that time the Government had seen those matters as significant.

C. The Court not permit consideration of issues opportunistically that the Government did not think was important in previous hearings but now wishes to amplify merely for gamesmanship.

D. If the Court treats issues raised as now being before the Court, the Court should do so formally and clearly as an explicit modification of the conditions of release from detention such as investigating Thomas' medical status.

E. The Court should perhaps with the assistance of the parties edit the release proposed by Pre-Trial Services to make clear that the Government is not a participant in Thomas' medical treatment or therapy although is entitled to confirmation that Thomas is pursuing whatever meetings, sessions, treatments, etc. recommended by a medical professional to the professional's satisfaction.

F. Defendant Thomas will be happy to provide the Court with whatever evaluation the Court thinks proper – disclosing at least in conclusory terms what a professional thinks is proper to disclose (truthfully of course) – however, Thomas at the request of professionals he has consulted asks the Court to provide more specific details about what exactly the professionals should

evaluate and what kind of deliverable end result they are expected to produce. This may not seem to be significant to lawyers and judges, but it seems to bother the medical and therapeutic academics and professionals.

G. The Court should at least define what contact the Government may have with medical or therapeutic professionals with an eye to lack of surprise, clear expectations, transparency,[5] and confidence among professionals that there normal routines and the integrity of their work is not being modified by the involvement of Government personnel.[6]

H. The Court should clarify that – presumably in harmony with professional ethics – that a therapist would act upon any indications or concerns that the Defendant shows genuine signs of being a danger to anyone, but that beyond that the Government is not entitled to the substance of therapy or confidences shared.

I. Counsel is not suggesting that the Court pre-judge at this time the ramifications of any decision that might be made at some time in the future about raising any defense or explanation from Thomas' medical condition(s).  No such decision has been made, certainly not in final form, and counsel would ask that the procedural issues if that decision is ever made be addressed at that time.

---

[5]     Defendant Thomas in talking with candidate therapists was left with the strong impression that Government personnel expected to talk to his therapist behind his back.  Perhaps this was miscommunication, but it created concerns.

[6]     The Court can appreciate that this sort of thing happens a lot such as with parents of patients (of whatever age), etc., making therapists somewhat sensitive to their boundaries.

Dated: June 28, 2023

Respectfully Submitted,

<u>/s/ *John M. Pierce*</u>
John M. Pierce
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: jpierce@johnpiercelaw.com

*Attorney for Defendant*

CERTIFICATE OF SERVICE

I hereby certify that I uploaded this document to the Court's electronic filiing system, which thereby serves all parties.

/s/ John M. Pierce