## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| UNITED STATES OF AMERICA, |
| v. |
| ISAAC ANTHONY THOMAS, |
| Defendant. |

Criminal Action No. 23-0069-1 (CKK)

### MEMORANDUM OPINION & ORDER
(August 28, 2023)

Pending before the Court is the Government's [33] Motion to Revoke Release as to Defendant Isaac Thomas.  At the hearing held on August 28, 2023, the Court made an oral ruling that, pursuant to 18 U.S.C. §§ 3148(b)(1)(B) and (b)(2), it finds by clear and convincing evidence that Defendant Thomas has violated conditions of his release and that he is unlikely to abide by any condition or combination of conditions of release.  The Court therefore **GRANTS** the [33] Motion.  The Court **ORDERS** that Defendant Thomas's release is **REVOKED** and that Defendant shall be **REMANDED** to the custody of the United States Marshal Service.

### I. BACKGROUND

Defendant Isaac Thomas was charged by [11] Indictment with Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; Assaulting, Resisting, or Impeding Certain officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b); Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A);

Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A); Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18. U.S.C. §§ 1752(a)(4) and (b)(1)(A); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

Defendant Thomas has been subject to the [9] Order Setting Conditions of Release. *See* Order, ECF No. 9.  He has been in violation of various conditions since April 2023.  *See* Pretrial Violation Report, ECF No. 23 (filed April 19, 2023).  On June 24, 2023, the Government filed a [33] Motion to Revoke Release Order.  At a subsequent status hearing on July 3, 2023, Defendant represented to the Court that he was working to come into compliance with his conditions of release, so the Court continued its consideration of the [33] Motion until the following hearing. On August 18, 2023, the Court held an initial revocation hearing in this matter.

The Court held a continued revocation hearing on August 28, 2023, during which time the Court provided a brief history of each of Defendant's violations.  After discussion involving both parties, the Pretrial Services Agency ("PSA") for the Eastern District of Michigan and for the District of Columbia recommended that Defendant's bond be revoked at this time.  The Government continues to support this recommendation.  The Court made an oral ruling that, pursuant to 18 U.S.C. §§

2

3148(b)(1)(B) and (b)(2), it finds by clear and convincing evidence that Defendant Thomas has violated conditions of his release that he is unlikely to abide by any condition or combination of conditions of release.

The Court now discusses Defendant Thomas's various violations of his conditions of release—in particular, regarding housing, marijuana use, and a mental health evaluation—and issues a formal written order revoking Defendant Thomas's release.

## II. DISCUSSION

### A. Housing

Defendant Thomas is required to maintain a residence that PSA can monitor after having initially assessed its appropriateness.  In March 2023, PSA conducted an initial home assessment for Defendant's residence in Michigan.  Report, ECF No. 32, at 3. Defendant's PSA supervising officer attempted to conduct a home conduct on May 19, 2023, but Defendant indicated he was not comfortable with the officer coming to his home without his attorney present.  *Id.*  The supervising officer explained that Defendant was welcome to call his attorney or record the officer during the visit, but that unannounced home visits are a standard condition of pretrial release.  *Id.*  Despite this, Defendant continued to refuse.  *Id.*  A home assessment was not completed until July 27, 2023.  Report, ECF No. 40, at 3.

As outlined in further detail in the Court's [43] Memorandum Opinion, Defendant then moved to Texas without prior Court or PSA approval and, as a result, supervision by either Michigan or Texas was not possible.  Defendant was evicted from his Michigan home in July.  Mem. Op., ECF No. 43, at 1.  He made plans to travel to Texas, which he

3

cleared with PSA; he was permitted to travel to Texas to inspect the residence offered to

him, but was expressly told that he must obtain a Court order for a permanent move. *Id.*

at 2. While in Texas, Defendant notified his supervising officer that he would not be

making it back to Michigan by the initial deadline; he then filed a [39] Motion indicating

that "the move is not a temporary visit but contemplated to be a permanent relocation."

*Id.* at 2 (citing ECF No. 39 at 2). On August 17, 2023, the Court issued a [42] Order

denying Defendant's [39] Motion to Modify Conditions of Release allowing him to move

to Texas.

The Court held a revocation hearing on August 18, 2023, at which time Defendant

Thomas indicated that he would prefer to remain in Michigan and proposed living with

his aunt. *See* Minute Order, Aug. 18, 2023. At the suggestion of Defense counsel, the

Court permitted Defendant Thomas to live temporarily with counsel in Washington, D.C.

until such time that PSA could confirm housing for the Defendant in Michigan, either

with his aunt or in alternative housing. *See id.*; *see also* [45] Order Amending [9] Order

Setting Conditions of Release.

On August 21, 2023, the PSA supervising officer reported that she was unable to

conduct a home assessment at Defendant's aunt's reported address because the phone

number Defendant provided was disconnected. Report, ECF No. 47, at 4. When

informed of this, Defendant indicated that he no longer wanted to live with his aunt and

represented that he found his own housing leasing a property from a landlord named Jim

Mcauley. *Id.* Defendant refused to tell PSA how he had found the residence. *Id.* PSA

instructed Defendant to provide the rental agreement and contact information for the

homeowner; Defendant emailed an unsigned lease with Mr. Mcauley's name but no contact information.  *Id.*  At the continued revocation hearing on August 28, 2023, PSA for the Eastern District of Michigan confirmed that they had not yet received any additional information from Defendant.  Defense counsel stated that they now had a copy of the lease signed by the landlord.

The Government's [48] Notice outlines some concerns about Mr. Mcauley, specifically that properties owned by Mr. Mcauely have thousands of dollars in tax arrearage as well as over $500 of unpaid utilities costs.  Notice, ECF No. 48, at 1–2.  The Government also called into question the veracity of the lease itself.  *Id.* at 2–4.  At the August 28, 2023 hearing, the Government expressed that their findings in the [48] Notice made them question whether Defendant's suggested residence would be a stable home.

To date, PSA has not been able to approve any living arrangement in Michigan or otherwise for Defendant Thomas.

### B. Marijuana Use

Defendant Thomas has failed to comply with Court orders regarding his use of marijuana since May 2023.  On April 19, 2023, Pretrial Services Agency ("PSA") for the District of Columbia filed its first [23] Pretrial Violation Report, in which PSA explained that Defendant had tested positive for marijuana three times.  Report, ECF No. 23, at 3.  PSA had reminded Defendant Thomas that his [9] Order Setting Conditions of Release prohibits him from using marijuana and, importantly, it remains a federal offense to use marijuana except for medical purposes.  *Id.*  Defendant argued that he used marijuana for

medical purposes—specifically, to treat his anxiety—and that he would contact his attorney to seek approval from the Court.  *Id.*

At the next status hearing on May 1, 2023, the Court discussed the [23] Report and ordered Defendant to sign a release of information to allow Defense counsel and Pretrial Services Agency to receive paperwork, records, et cetera from his medical provider regarding his marijuana prescription, to include the reason for the prescription and amount of marijuana prescribed.  *See* Minute Order, May 1, 2023; Minute Order, June 16, 2023.

Defendant failed to comply with this order.  PSA's [32] Pretrial Violation Report, filed June 23, 2023, indicated that that Defendant had tested positive for marijuana an additional time and, although ordered by the Court, had not provided documentation confirming he was prescribed marijuana by a licensed medical practitioner.  Report, ECF No. 32, at 2–3.  PSA stated that "[a]fter several attempts to work with the defendant, he continues to fail to comply with the stated conditions," and therefore, "PSA is requesting program removal."  Report, ECF No. 32, at 2.  This, among Defendant's other violations, prompted the Government to file the pending [33] Motion for Revocation of Release.

PSA then filed the [37] Pretrial Violation Report on June 30, 2023, stating that Defendant Thomas provided PSA a photocopy of what appeared to be a marijuana card on June 29, 2023.  Report, ECF No. 37, at 3.  The same day, PSA had received a signed release of information for Greenlight Wellness Cannabis Doctors, which they were unable to verify as a licensed medical practitioner.  *Id.*

At the following status hearing on July 3, 2023, Defendant Thomas represented that he had since signed medical release forms authorizing PSA to obtain medical records regarding Defendant's purported prescription for medical marijuana. *See* Minute Order, July 6, 2023. The Court discussed Defendants use of marijuana and lack of clarity regarding whether his prescription is legitimate. *Id.* The Court therefore continued its consideration of the [33] Motion to Revoke Pretrial Release given Defendant's alleged recent efforts to comply with Court orders. *Id.* The Court ordered Defendant to obtain medical records from Greenlight Wellness Cannabis Doctors confirming the purpose of his marijuana prescription and dosage, and instructed PSA to confirm that the facility was a licensed medical practice. Report, ECF No. 40, at 2.

In PSA's [40] Pretrial Violation Report, filed August 15, 2023, they explain that they reached out to Greenlight Wellness, who told them that the company does not give specific dosing. Report, ECF No. 40, at 3. The PSA supervising officer contacted the Michigan Department of Licensing and Regulatory Affairs, who responded that they did not find Greenlight Wellness listed under Medical Facility Licensing or Adult-Use Establishment Licensing; therefore, based on the Department's answer, PSA "was not able to confirm licensing for the medical marijuana facility." *Id.*

Once in Texas, Defendant Thomas provided a signed release for Green Mind Physicians to PSA on July 31, 2023. *Id.* PSA stated in their [40] Report that "[a]n online search revealed this as an online business that helps individuals identify medical marijuana doctors" and, additionally, there was no identified office in Texas. *Id.* Defendant Thomas also sent PSA a screenshot of a telehealth appointment for an Initial

Medical Marijuana Evaluation with a Dr. Joel Durinka. *Id.* PSA conducted an online search and found a Dr. Joel Durinka who was a general surgeon located in Buffalo, New York. *Id.* Defendant also indicated that he was approved for medical marijuana use and registered with the Compassionate Use Program in Texas but did not provide verification of this approval. *Id.* Lastly, PSA was also unable to verify the Defendant's newly issued medical marijuana card or the facility that issued it. *Id.*

At the August 28, 2023 hearing, PSA for the Eastern District of Michigan confirmed that they had not received any updated information. Accordingly, to date, Defendant has not provided information for a verifiable licensed medical facility nor doctor to support his marijuana usage, nor verifiable information as to what dosage would be medically appropriate. Defendant cannot on his own determine usage and dosage of marijuana. Furthermore, he has continued to test positive for marijuana; his last positive test was July 27, 2023.

### C. Mental Health Evaluation

At the May 1, 2023 status hearing, the Court referred Defendant Thomas for an outpatient mental health evaluation upon review of PSA's [23] Report. The Court ordered Defendant to undergo a mental health assessment and sign all required releases of information for PSA to obtain and report treatment compliance to the Court. *See* Minute Order, May 1, 2023; Minute Order, June 16, 2023.

PSA's [32] Report, filed June 23, 2023, indicated that Defendant Thomas claimed to have completed an assessment with Insight Behavioral Health in Flint, Michigan on June 9, 2023; however, this could not be verified as Defendant refused to sign a release of

information for PSA to contact the facility.  Report, ECF No. 32, at 3; *see also* Report, ECF No. 37, at 3.  PSA stated that "[a]fter several attempts to work with the defendant, he continues to fail to comply with the stated conditions," and therefore, "PSA is requesting program removal."  Report, ECF No. 32, at 2.

In PSA's [37] Pretrial Violation Report, filed June 30, 2023, they stated that they received a signed release of information from Genesee Health Systems dated June 29, 2023.  Report, ECF No. 37, at 3.  The PSA supervising officer called Genesee Health Systems and confirmed that Defendant Thomas had completed a mental health screening on that date, but that an intake assessment was not yet scheduled.  *Id.*  Defendant reported to PSA that he would complete an assessment at Genesee Health Systems but would continue to receive treatment with Insight Behavioral Health, and continued to state he would not provide a release for their facility.  *Id.*  An intake assessment with Genesee Health Systems was eventually scheduled for July 24, 2023, but Defendant did not complete this assessment as instructed.  Report, ECF No. 40, at 2.

Once in Texas, Defendant notified his supervising officer that he had scheduled an evaluation at Texas Seay Behavioral Health Center ("Seay") for July 31, 2023 and signed a release for that facility.  *Id.* at 3.  He reported to PSA that he completed the assessment and no recommendations nor treatment had been made.  *Id.*  However, when the PSA supervising officer spoke to the social worker at Seay who had completed the assessment, PSA learned that although Defendant reported for an in-person appointment that date, a full biopsychosocial assessment was not completed and therefore no diagnosis given.  *Id.*  Additionally, Seay had provided Defendant with a referral for outpatient treatment;

Defendant indicated he did not want their recommendation for treatment and denied Seay's referral. *Id.*

At the initial revocation hearing on August 18, 2023, the Court ordered Defendant Thomas to cooperate with PSA for the Eastern District of Michigan to get the appropriate assessment. On August 21, 2023, the PSA supervising officer informed Defendant that he could do an assessment at Sacred Heart Rehabilitation and told Defendant he must sign a release of information for her to schedule the assessment; Defendant refused to provide the required release. Report, ECF No. 47, at 3. At the August 28, 2023 hearing, PSA confirmed that Defendant had still not signed the release.

Accordingly, Defendant Thomas remains in violation of Court order to cooperate with the necessary mental health assessments and required releases.

### D. Other Violations

Defendant Thomas has also violated other conditions of release. For example, on April 28, 2023, PSA filed a [24] Pretrial Violation Report indicating that Defendant was involved in a traffic stop in Flint, Michigan and charged with No Proof of Insurance and Violation of Safety Belt. Report, ECF No. 24, at 3. He did not report this to his supervising officer, *id.*, as is required by his conditions of release, *see* ECF No. 9 at 3.

Defendant Thomas also now has a misdemeanor case against him in Michigan. On August 8, 2023, the day before Defendant was to appear for an in-person hearing in that jurisdiction regarding a traffic citation, he called the clerk of the court in Michigan approximately fifty to one hundred times requesting that an in-person hearing be changed to a Zoom hearing. *See* Mem. Op., ECF No. 43, at 4. The clerk called the Burton City

Police Department, resulting in Defendant being charged with the misdemeanor offense of Threats by Computer, Telephone, or Other Communication Device.  *See id.* Defendant did not report this contact with law enforcement either, Report, ECF No. 47, at 5, as is required by his conditions of release, *see* ECF No. 9 at 3.

### III. CONCLUSION & ORDER

At the revocation hearing on August 28, 2023, the Court discussed Defendant Thomas's various violations that make out a serious pattern of noncompliance.  The Court then made an oral ruling revoking Defendant's bond.  Now, based on the record before the Court, and pursuant to 18 U.S.C. §§ 3148(b)(1)(B) and (b)(2), the Court finds by clear and convincing evidence that Defendant Thomas has violated conditions of his release, that he is unlikely to abide by any condition or combination of conditions of release.

In accordance with these findings, it is hereby **ORDERED** that the Government's [33] Motion is **GRANTED**.  It is further **ORDERED** Defendant Thomas's release is **REVOKED** and that Defendant shall be **REMANDED** to the custody of the United States Marshal Service.

**SO ORDERED**.

Dated: August 28, 2023

_____
/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge