## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *v.* | ) | No. 23-0069 (CKK) |
| | ) | |
| ISAAC ANTHONY THOMAS, | ) | |
| | ) | |
| *Defendant*. | ) | |

_____

## MR. THOMAS'S MOTION TO ENFORCE THE COURT'S BAIL ORDER AND ORDER IMMEDIATE RELEASE FROM PRE-TRIAL DETENTION

Now comes Isaac Anthony Thomas (herein "Thomas", "Mr. Thomas", or "Defendant Thomas"), by and through his undersigned counsel, and hereby moves for enforcement of Mr. Thomas' prior Bail Order; and, pursuant to 18 U.S.C. § 3142(i), to order the immediate temporary release of Thomas from confinement at the DC jail to the custody of Mr. and Mrs. Marden (new parties and housing that has not been presented to the Court), on conditions suitable to the Court. The instant application is based on, *inter alia,* the following: (1) since the time Mr. Thomas has been in the DC Jail he has not caused any disciplinary issues or problems, and remains intent on obtaining all the discovery possible as to allow him to assist in his own defense; (2) the conditions of confinement at the DC jail have established an environment that make Defendant Thomas unable to prepare for his own trial, violating his right to a fair trial; (3) herein Thomas presents a viable plan, complied

with new information, not available prior; and (4) the overall plan consists of proposals and conditions that Thomas can comply with.

Additionally, Thomas submits the following supporting reasons for the instant application. Thomas has a Sixth Amendment right to participate in, and, indeed, conduct—his own defense. *McKaskle v. Wiggins*, 465 U.S. 168, 174, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) (highlighting that the "Counsel Clause" of the Sixth Amendment "implies a right in the defendant to conduct his own defense, with assistance at what, after all, is his, not counsel's trial."); *See also Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) (recognizing that "the accused has the ultimate authority to make certain fundamental decisions regarding the case, such as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.").[1]

Simply stated, in this matter, Thomas just seeks to be heard on his Section 3142 (i) claims, about which encompass and grant this Court the power and authority, by subsequent order, to permit the temporary release of a detained person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason. 18 U.S.C. § 3142(i).

---

[1] *See also Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2509 n. 1, 53 L.Ed.2d 594 (1977) (BURGER, C.J., concurring); ABA STANDARDS FOR CRIMINAL JUSTICE 4–5.2, 21–2.2 (2d ed. 1980)).

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____     )

UNITED STATES OF AMERICA,                           )
                                                                          )
                    *v.*                                                )          No. 23-CR-69 (CKK)
                                                                          )
                                                                          )
                                                                          )
ISAAC ANTHONY THOMAS                             )
                                                                          )
                    *Defendant*.                               )
_____     )

**THOMAS'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION
TO ENFORCE THE COURT'S BAIL ORDER OR TO ISSUE A NEW
ORDER IMMEDIATELY RELEASING THOMAS
<u>FROM PRE-TRIAL DETENTION</u>**

STEVEN A. METCALF II, ESQ.
Metcalf & Metcalf, P.C.
99 Park Avenue, Suite 810 (NEW SUITE)
New York, NY 10016
(*Office*) 646.253.0514
(*Fax*) 646.219.2012

## I.   RECENT HISTORY IN THIS MATTER

1.     On December 7, 2023, this Court issued a four-page decision (ECF Doc. 78) denying Thomas's motion to reopen and reinstate his bond application. (ECF Doc. 73). Such denial of Thomas's motion was without prejudice. In such decision, the Court analyzed two standards, first under § 3148, and second under § 3142 of the Bail Reform Act.

2.     As for the first standard, under § 3148, the Court reasoned the following:

> the Court finds that Defendant has not presented any new information that was not known to him at the time of the hearing, nor does the information presented have a material bearing so as to convince the Court that he would abide by any conditions of release. Defendant Thomas has not provided new information regarding adequate housing.

(*See* ECF Doc. 78 at p. 2).

3.     The Court further explained that Thomas "argues that he can stay with his aunt and uncle, Mr. and Mrs. Baker." (*Id. citing* Def.'s Mot. at 4).

4.     Its undisputed that "Mr. Thomas's aunt and uncle were known at the time of the initial hearing on revocation." (*Id. citing* Gov.'s Opp'n at 3). However, this option was not fully explored at the time. The most recent number for the Aunt was never provided to Pre-trial, thus at the time Pre-trial never spoke to the Aunt or Uncle and never visited and inspected their home.

5.     More importantly, this Court found that "the suggested housing with Mr. and Mrs. Baker is not adequate." *Id.*

6.     Defendant previously lived with Mr. and Mrs. Baker but moved out after an argument about following house rules. *Id.* In Defendant's motion filed on November 21, 2023, it was stated that "despite their concerns regarding Thomas' attitude in the past, Mr. and Mrs. Baker have agreed to help Thomas with housing and be supportive family members." (*Id. citing* Def.'s Mot. at 4).

7.     However, Pretrial Services reported information to the contrary that was not able to be explained. For example, PSA for the Eastern District of Michigan completed a home investigation on November 15, 2023, at Mr. and Mrs. Baker's home. *See* ECF No. 77 ("PSA Report") at 2. During this visit, *prior* to the Defendant's motion being filed, Mr. and Mrs. Baker informed PSA that they were only willing to allow Defendant to reside with them for up to thirty days. *Id.* Then, on December 1, 2023, the children of Mr. and Mrs. Baker involved themselves  and contacted PSA for the Eastern District of Michigan and expressed concerns with Defendant's placement, asking that Mr. and Mrs. Baker not be contacted regarding this matter. *Id.*

8.     In addition, PSA was informed that Mr. and Mrs. Baker have significant health issues and are scheduled for surgery in the near future, though exact dates were not provided. *Id.* Finally, during the home investigation, PSA found an antique

gun lying on a bed, which Mr. and Mrs. Baker initially refused to relocate outside the home. But, just to clarify the record, Defendant now indicates that after the home inspection, the aunt and uncle agreed to remove the gun from their home. (*See* ECF Doc. 73 at p. 4).

9.      All this aside, as of the date the children interjected themselves into this matter, we no longer sought to have this as a housing option.

10.      Nonetheless, the Court found that "this housing falls far short of the standard; significantly, he does not present any evidence that he will abide with the required condition of release regarding adequate housing, as the latest information from PSA indicates that he does not have a place to live."

11.      "The Court will also briefly mention concerns regarding some of Defendant's other conditions of release." (*See* ECF Doc. 78 at p. 2). In regards to Thomas's marijuana use, he indicates that "he no longer wishes to attempt to treat with medical marijuana during the pendency of this case[2]. . . . That Defendant makes this statement now does not convince the Court that he will comply in light of his previous, repeated noncompliance." (*Id. citing* Mem. Op., ECF No. 50 at 5 ("Defendant Thomas has failed to comply with Court orders regarding his use of marijuana since May 2023.").

---

[2] *Id. citing* Def.'s Mot. at 5.

12.     "Furthermore, Defendant's choice to no longer attempt to use marijuana is not "information... [that] was not known to [him]" at the time of his previous detention hearings, 18 U.S.C. § 3142(f)(2)(B), but instead a choice that was available to him previously but he chose to ignore." *Id.*

13.     It must be mentioned that Thomas was advised in a certain way, by prior counsel, and such was not Thomas "ignoring" anything. We now seek to explain to this Court that the mental health evaluation is a prime example of how Thomas has been recognizing the wrongs of his prior ways. With new counsel, Thomas first agreed, on the record, to such evaluation. As the Court highlighted "Defendant Thomas has completed a mental health evaluation, Def.'s Mot. at 4, which took place *after* he was in custody and the Court ordered District of Columbia Department of Behavioral Health, Pretrial and Assessment Branch to conduct such evaluation, Gov.'s Opp'n at 4; *see also* Order, ECF No. 67 (ordering evaluation after Defendant was in custody)."

14.     Respectfully, part of Defendant Thomas's "new plan" is to address the wrong and inaccurate advice he received from prior counsel, which fueled his poor decisions. Thomas seeks to learn from his ways and make certain issues right.

15.     It is also undisputed that "[p]rior to his detention, Defendant Thomas repeatedly failed to cooperate with Court orders to receive the necessary mental health assessments and provide required releases." (*Id. citing* Mem. Op., ECF No.

50 at 8–10). Again, the gas that fueled such prior decision was the advise he was seeking and whom he was seeking it from at the time.

16. Lastly, the Court explained that the "evaluation report, which was provided to the Court and both attorneys, included the professional opinion of the licensed clinical psychologist that Defendant Thomas is competent to stand trial." *Id.*

17. With regard to the second standard, under Section 3142(i), Mr. Thomas should be released so that he can assist in preparing for his own defense. However, this Court found that Defendant also falls short on this standard. "[U]nder this statutory provision, [the defendant] must show that (1) he would be released to 'an appropriate person' and (2) that his temporary release is 'necessary . . ..'" *United States v. Riggins*, 456 F.Supp.3d 138, 149 (D.D.C. 2020 (CKK). Overall, the Court found the following:

> Here, Defendant has failed on both elements. For the first element, the Court incorporates its analysis above regarding Mr. and Mr. Baker, finding that they are not appropriate and adequate persons. And for the second element, Defendant does not provide any argument as to why release is necessary to prepare his defense or for any other compelling reason. The extent of his explanation on this point is the conclusory statement that Defendant needs the "ability to meaningfully participate in his defense.

(*Id.* at p. 4 *citing* Def.'s Mot. at 5).

18.     In going back to Thomas's November 21, 2023 motion (ECF Doc. 73), it must be stressed here, that your Affirmant conducted a thorough investigation, and had numerous calls with Pre-trial and the AUSA prior to submitting such application.   Simply stated, I was committed to establishing a collegial and constructive relationships and professionalism, and attempted to work positively and constructively with all parties in this case.

19.     These conversations and consultations, informally, were designed to work out all the nuts and bolts before bringing a well worked-out plan to the Court. At the time, I was confident from the discussions that taken place that there was a consensus to resolve Isaac Thomas' detention and to enforce the original orders of this Court issued March 30, 2023, which should remain in force, according to the original terms thereof.

20.     As I thought that there was a consensus to resolve Thomas' detention and to enforce the original orders of this Court issued March 30, 2023,  I mistakenly was under the impression that the Government was not going to file an opposition on such application. Then a strong opposition was indeed filed.

21.     Further, I believed that Pretrial would not take a position, but would also include additional favorable terms. Specifically, I believed we had discussions of the aunt and uncle agreeing to remove the firearms from their premises – after the

home inspection – and that as a couple and family to Thomas that they were viable candidates for Thomas to reside with and at their home.

22.     It's sad, but that family situation quickly spiraled out-of-control, and is no longer an option. Anything mentioned herein about the aunt and uncle and them providing housing is merely for clarification purposes.

23.     The silver lining that did come of this family breakdown is Marden family, which will be explained in further detail below.  When the Marden family learned of the aunt and uncle's change in position, the Mardens quickly agreed to open their home to Mr. Thomas – with strict conditions that drinking and smoking is not tolerated in their home.

24.     Again, Mr. Thomas has learned his lesson being the DC jail, in addition to his need to assist in his defense. Mr. Thomas has been physically assaulted, and the Jail throws Mr. Thomas in "the hole" for what has ridiculously be determined "for his own protection". Instead of the jail punishing the aggressor, Thomas gets thrown literally in a "hole" because another inmate continue to physically attack Thomas.

25.     It is respectfully submitted that this application is examined with all the parties before another decision is rendered because as new facts were presented each day – counsel simply did not have enough time to get answers and file a reply before the December 7, 2023 decision was rendered.

## II.  <u>LAW AND ARGUMENT</u>

### A.    OVERVIEW AND HISTORY OF BRA

Congress enacted the Bail Reform Act of 1984 to liberalize bail, not to impose a one-sided burden upon Defendants to the exclusive benefit of the Government. Congressional purpose is highlighted as follows:

> As we perceive the totality of the Bail Reform Act, as amended, there is no conflict. *Congress expanded the availability of bail*, proscribing the setting of a high bail as a de facto automatic detention practice. Congress also made manifest that *the relaxed-release requirements* were not to be universally applied. Congress directed and empowered the judicial officer to impose conditions of release *designed to secure reasonable assurance of the defendant's appearance and the safety of others*.

*U.S. v. McConnell*, 842 F.2d 105 (5th Cir. 1988).

Defendant's position remains that the Congressional purpose of the Act is in liberalizing bail and simplifying bail proceedings from technical traps frustrating bail for defendants.

Here, this Court issued an order on March 30, 2023, for the purpose ordering release from pre-trial detention for Thomas. The March 30, 2023, Order continues to govern now, and the question is the application of the conditions imposed on March 30, 2023.  The Government admits that the current posture is that the original March 30, 2023, Order is still in force, unaltered; thereby raising the question whether the terms of the Order have been complied with. (*See* ECF Doc. 74 at p. 2).

Thomas herein has presented a plan, where he can easily comply with all the conditions, and a plan with suitable housing and suitable people who will also look over him while he prepares his defense and to go to trial. This time the housing situation will not fall like dominions when the children show up.

**B.** **THOMAS REQUESTS HIS SECTION 3142 (i) APPLICATION BE GRANTED BECAUSE SUCH RELEASE IS NECESSARY FOR THOMAS TO PREPARE FOR HIS DEFENSE AND HE IS UNABLE TO PREPARE OR AID IN HIS DEFENSE WHILE IN CUSTODY.**

With regard to the second standard raised by this Court in its December 7th Order, the defense once again requests that under Section 3142(i), Mr. Thomas be released so that he can assist in preparing for his own defense.

As this Court emphasized, it may also "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." *Id.* § 3142(i).

A defendant's inability to review discovery or trial evidence in jail is the locus classicus for temporary release under § 3142(i). *United States v. Persico*, No. 84-cr-809 (JFK), 1986) U.S. Dist. LEXIS 27586, 1986 WL 3793, at p. 1 (S.D.N.Y. Mar. 27, 1986) (reviewing cases in which "temporary releases of defendants therein were granted prior to trial in order to facilitate the defendants' expeditious preparation for trial and thus to promote the prompt disposition of the charges against each defendant" where "[t]he concern in each case was that, given the admittedly limited

access to telephones and attorney conference rooms at the detention facilities, the effective preparation of a defense might have been impossible in the short time available before the commencement of trial").

Most importantly, the future of Thomas case is the main priority. With that, Thomas needs access to discovery, trial evidence, or otherwise prepare for trial, and to make an intelligent decision as to elect whether to proceed with trial. His circumstances at the DC jail make it impossible for him to clearly, willingly, and intelligently make such decision in speaking with his new counsel. Second, a short period of time before trial, even if months away can fly away if each day is not maximized to its capacity. Such problems exist and will continue to progress with counsel of record because our discussions and preparations are consistently being hindered. *United States* v. *Angiulo*, Cr. No. 83-235-N, slip op. (D. Mass. Feb. 25, 1985); *United States* v. *Franzese*, No. 85 Cr. 755, slip op. (E.D.N.Y. Feb. 19, 1986).

Thomas just wants to prepare for trial, without any further interference or unnecessary interaction.[3] He seeks to not have to sit in the same cell, in constant fear, that at any minute he will be assaulted and all of his legal work will be stripped from him. Due to the disparity in resources and the ability to prepare, Thomas cannot

---

[3] More than two years ago, it was found that the conditions of confinement at the DC Jail rose to a level of such severity that Judge Royce C. Lamberth recently found "that the Warden of the DC Jail Wanda Patten and Director of the D.C. Department of Corrections Quincy Booth are in civil contempt of court." (*See U.S. v. Worrell*, Order dated 10/13/2021, Document 106). That was two years ago!! Nothing has changed, and for some people such as Thomas – Things have only got worse.

possibly assist in his defense preparing a viable defense against the government, in this case.

**C.**  **THOMAS HAS PRESENTED NEW INFORMATION TO SUPPORT HIS SECTION 3142 (i) APPLICATION AND HE WILL BE RELEASED TO AN APPROPRIATE PERSON IN ACCORDANCE WITH THE SECOND STANDARD**

It is respectfully submitted that to clarify the record, during his motion to reopen his bond Mr. Thomas presented new information regarding his housing situation, not known to him at the time of prior hearings. (*See* ECF Doc. 73). First, it was *not* known to Defendant Thomas prior that his uncle and aunt, Mr. and Mrs. Baker would actually allow Thomas to continue to stay in their home and that he would be able to obtain adequate housing through them. Initially, he presented Pre-trial with his aunt's old number that was no longer in service. As such, Pre-trial never had the chance to speak with his aunt or uncle at that juncture or conduct a home inspection.

It was not until preparation for Thomas' Motion to Reopen that the correct phone numbers and contact information for his aunt and uncle were even turned over to Pre-trial. Basically, the governments position on this housing arrangement was completely different during conversations than that filed in their opposition. Had I have known of their harsh stance – I would have re-assessed before I filed the Motion to Reopen. Regardless and yet again, there was then a series of unfortunate events that quickly led to a downward spiral making this option no longer a viable one.

14

What could have been a simple and quick understanding and agreement, resulted in a multi-family member heavily involved dispute.

Nonetheless, now that the aunt and uncle are no longer an option due to their children not agreeing with their parents housing Mr. Thomas[4], another family friend has stepped up to the table and offered to open their home to Mr. Thomas. (*See* Marden Letter attached as **Exhibit A**).

Defendant Thomas now brings forth newly discovered information that has a material bearing on him abiding by his conditions of release. While it is imaginably difficult to obtain adequate housing when one does not have a close extended family, as is the case of Thomas' family. Additionally, Thomas does not have current employment, but is intelligent and eager to make his own money again, and get his own place as soon as his circumstances permit such improvement.

But at this time, Mr. Thomas has been able to secure adequate housing through Leonard and Sherry Marden, who own a home located at 4320 N Oak Road, Davidson, MI. This brick home is over 3,500 square feet and spans a property line over 10 acres. This beautiful home has more than enough room for the Mardens and their one child who still lives there for everyone to be comfortable, and merely enjoy each other's company.

---

[4] It should be noted that Pre-Trial never objected to Mr. Thomas' aunt and uncle's ability to provide adequate housing, and be suitable candidates to oversee Mr. Thomas if he were released again on bond.

Mr. and Mrs. Marden have been kind enough to open their homes to Mr. Thomas which just goes to show while Mr. Thomas has nothing to offer financially at the moment to the Mardens, Mr. Thomas is capable of obtaining someone's trust and support. Mrs. Marden expressed that the entire time she has known Thomas, she has only seen this young man actively seeking to performing his wish in helping others.

The issues such as the length of stay, scheduled surgeries, and the placement of firearms that were present with the aunt and uncle are not present here. Therefore, the concerns that he would be unable to abide by his conditions of release are resolved.

### D.   THOMAS HAS PRESENTED NEW INFORMATION TO SUPPORT HIS APPLICATION SPECIFICALLY WITH REGARD TO MARIJUANA AND THE COMPLETION OF HIS MENTAL HEALTH EVALUATION.

Regarding Mr. Thomas' use of medical marijuana it is clear that his previous choices to utilize his medical marijuana status was a failure to comply. However, at this time we are merely communicating to the Court that Mr. Thomas fully intents and promises to the Court to forgo this even as an option. Thomas has not been able to use this pain management treatment during the months he has been at the DC jail. Thomas new proposed housing option also comes with strict instructions that smoking is not tolerated while at the Mardens residence.

While Thomas's statements may not be convincing enough in nature, we hereby present an additional fact with the Marden family. In confirming with Sherry Marden, she emphasized that she was emphatically clear with Thomas that the rules of the house consist of *no* alcohol, smoking, and specifically *marijuana* regardless of a prescription. Mr. Thomas offers his commitments to this Court going forward.

Moreover, regardless if Mr. Thomas believed he had valid permission from a Doctor for medical use of marijuana due to the need for pain management for his nine (9) pins surgically inserted into his arm – Mr. Thomas is going to prioritize complying with the Court.

Despite all of this, and now that it is beyond clear that marijuana is now an issue for the Court, Mr. Thomas will comply because as one may infer, Mr. Thomas has been impacted by his mistakes and the consequences he has faced and has learned his lesson and does not wish to end up in the same awful situation he finds himself in today.

Moving to the Thomas Mental Health Evaluation, it must be addressed that Mr. Thomas never asserted lack of capacity to stand trial, from my understanding of the record in this matter. Therefore, this factor should not be negatively construed against Thomas. As briefly stated above, the fact that Thomas agreed to undergo such evaluation on the first court date that his new attorney appeared established Thomas's willingness to change, comply, and learn from his mistakes in the past.

Rather, this factor should be part of the plan, and should be applied as a positive for Thomas.

The positive change, improvement, and development with such factor is that Thomas has shown this Court his willingness to comply with any conditions even if he does not agree. Despite all prior counsel on this matter who I spoke with, including Mr. Thomas, being confused for the rationale behind the Court ordering a mental health evaluation, Mr. Thomas ultimately complied with such request and has no issues.

It is respectfully submitted that the Court is to consider information that has "a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

A "material bearing" excludes any information with no rational or logical basis or connection to these two factors. The statutory intent Congress explicitly set forward eliminates arbitrary, tangential, and immaterial conditions for release on pre-trial detention.  "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).

"The crux of the constitutional justification for preventative detention under the Bail Reform Act is that, '[w]hen the Government proves by clear and convincing

evidence that an arrestee presents an *identified and articulable threat* to an individual or the community, . . . a court may disable the arrestee *from executing that threat.*'" *United States v. Munchel*, 2021 U.S. App. LEXIS 8810, at 13 (D.C. Cir. March 26, 2021) (emphasis added) (*quoting Salerno*, 481 U.S. at 751).

"Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community." *Id.* at 19.  Additionally, "a defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *Id.* at 13.

Then, only after the government has met its burden of proving a specific articulable threat to an individual or the community, the government must establish, again by clear and convincing evidence, "that *no* condition or combination of conditions will reasonably assure the safety of any other person and the community," 18 U.S.C. § 3142(f)(2), or, in other words, that pretrial detention is the *only* means by which the safety of the community can reasonably be assured.  *See United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).

Lastly, this Court can order Thomas's "pretrial release subject to appropriate conditions, including home detention and electronic monitoring."  *United States v.*

*Tanios*, 856 Fed. Appx. 325, 326 (D.C. Cir. 2021)(*citing United States v. Munchel*, 991 F.3d 1273, 1282 (D.C. Cir. 2021)).

Here, the Government has neither established an articulable threat posed by Thomas to an individual or the community nor a fictional legal theory of how Thomas can pose such threat to an individual or community.

Overall, recently Mr. Thomas has made substantial improvement. First, his completion of his mental health evaluation; second, his finding of yet another suitable housing location; and, third, his willingness to completely forgo marijuana – all should constitute as "new information" favorable to Thomas. Furthermore, all should constitute his willingness to comply with each and every condition this Court orders going forward. Such willingness to comply even encompasses home detention and electronic monitoring. *Id.*

### E.   CONSTITUTIONAL AND LEGAL REQUIREMENTS WEIGH HEAVILY AGAINST DETENTION BEFORE TRIAL.

The deprivation of the liberty of a person not convicted of any crime, still presumed innocence, is such a serious matter that the Framers of the Constitution, including the first session of Congress added in the Bill of Rights:

The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines  imposed, nor cruel and unusual punishments inflicted."

The Eight Amendment to the US constitution is _not_ limited only to "Excessive _amounts_ of bail . . .",  but its interpretation has been complicated and combined with all the concepts of the Due Process clause. The Due Process Clause foresees eligibility for bail as part of "due process".  *Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 96 L.Ed. 3 (1951). Bail not only "permits the unhampered preparation of a defense," but also "prevent[s] the infliction of punishment prior to conviction." *Id.* at 4.

The Eighth Amendment reinforces the view that the Fifth Amendment's Due Process Clause does apply. While the Eighth Amendment forbids excessive bail, such Amendment does so in order to prevent bail being set so high that the level itself (rather than the reasons that might properly forbid release on bail) prevents provisional release. *See Carlson v. Landon*, 342 U.S. 524, 545, 72 S.Ct. 525, 96 L.Ed. 547 (1952) (explaining that the English clause from which the Eighth Amendment was copied was understood "to provide that bail shall not be excessive in those cases where it is proper to grant bail").

Such rationale applies a fortiori to a refusal to hold any bail hearing at all. *Cf. Jennings v. Rodriguez*, 138 S. Ct. 830, 862, 200 L. Ed. 2d 122 (2018).

Here, Courts are similarly obliged to interpret and apply the relevant statutes consistently  with the Eighth Amendment to the U.S. Constitution, not to relegate the Constitutional command to a mere backdrop. In light of this, Thomas respectfully requests that this application be addressed on the record because after the filing of

his last application everything changed on a daily basis, so fast that this Court rendered its decision without the updated information.

The last application was denied without prejudice, so the new information is herein presented.

## III.   <u>CONCLUSION</u>

For the aforementioned reasons, it is respectfully requested that this Court order Mr. Thomas's immediate release to the custody of the Marden family; and that this Court not hold it against Thomas of the family breakdown which lead to his aunt and uncle for changing their position. For all of these reasons stated above, and any that may become apparent at a hearing on this matter, Mr. Thomas respectfully submits that the Government has failed to meet its burden by clear and convincing evidence that he presents a risk of danger to society, in light of all the recent additional evidence that submitted herein.

Mr. Thomas just needs that second chance. A second chance with a new attorney, who will advise him in a way that Thomas may not want to hear at times. A second chance where Thomas can adequately assist in his own defense. A second chance where he is clear headed and not in constant fear of being attacked or thrown back in the "hole".

𝔚𝔥𝔢𝔯𝔢𝔣𝔬𝔯𝔢, Mr. Thomas respectfully requests that this Honorable Court release him immediately on bond regardless of the conditions, whether it be high intensity supervision and/or other undiscussed conditions the Court deems necessary.

Dated:  December 19, 2023

Respectfully Submitted,

*/s/ Steven Alan Metcalf II*

_____
STEVEN A. METCALF II, ESQ.
Metcalf & Metcalf, P.C.
99 Park Avenue, Suite 810 (NEW SUITE)
New York, NY 10016
(*Office*) 646.253.0514
(*Fax*) 646.219.2012
metcalflawnyc@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has been served upon counsel for all parties to this proceeding as identified below through the court's electronic filing system as follows:

MATTHEW M. GRAVES
United States Attorney

ADAM M. DREHER
Assistant United States Attorney
MI Bar No. P79246
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-1706
adam.dreher@usdoj.gov


/s/
_____
STEVEN A. METCALF II
*Attorney for Thomas*

Dated: December 19, 2023